IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RAY BLANCHARD, | * | |
| | * | |
| Plaintiff | * | |
| | * | Civ. No.: MJM-24-1325 |
| v. | * | |
| | * | |
| WARDEN, MARYLAND | * | |
| CORRECTIONAL TRAINING CENTER, | * | |
| *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Self-represented plaintiff Ray Blanchard initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 against the Warden of Maryland Correctional Training Center ("MCTC"), Correctional Officer Sanchez, and an unnamed correctional officer.[1] ECF No. 1. On December 9, 2024, Warden William Bohrer and Correctional Officer Roberto Sanchez[2] (collectively, "Defendants") filed a Motion to Dismiss, or in the Alternative, for Summary Judgment in response to the claims against them. ECF No. 16. Blanchard has opposed the motion and has filed a Motion to Appoint Counsel. ECF Nos. 18 and 19. Bohrer and Sanchez filed a reply. ECF No. 20. The issues have been fully briefed. The Court finds no need for a hearing in this matter. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Blanchard's Motion

---

[1] The unnamed correctional officer, or Correctional Officer X, has never been identified or served with the Complaint. Because the Complaint fails to state a claim against the unknown officer, the complaint shall be dismissed as to this defendant pursuant to 28 U.S.C. §§ 1915, 1915A.

[2] The Clerk will be directed to amend the docket to reflect the full and correct spelling of Defendants' names.

to Appoint Counsel shall be denied and Defendants' motion, construed as a motion for summary judgment, shall be granted.

I.  BACKGROUND

On or around April 6, 2023, at approximately ten o'clock, Blanchard was told by Sanchez that he was going to be moved from cell 7-A-38 to cell 7-D-24 in housing unit 7. ECF No. 1 at 5. According to Sanchez, Blanchard was being moved from Administrative Segregation to Disciplinary Segregation. ECF No. 16-4 at 2, ¶ 4. Initially, Blanchard refused to move but after being advised a second time to pack his personal belongings to bring with him, he complied and backed up to the opened security slot in the door to have his hands cuffed behind his back for the escort. *Id.* at 3, ¶¶ 4, 6. According to Blanchard, Sanchez became "profane with obscenities" while he was packing his property. ECF No. 1 at 5. Blanchard further contends that when Sanchez applied the handcuffs to his wrists, he intentionally "oversecured" the handcuffs on Blanchard's wrists for the sole purpose of causing him harm. *Id.* at 6. Sanchez denies putting the handcuffs on Blanchard too tightly. ECF No. 16-4 at 3, ¶ 10.

Blanchard claims that he "attempted to question the purpose for the 'unprofessional conduct'" by Sanchez and the assisting officer. ECF No. 1 at 6. In response to his questions, Blanchard claims that Sanchez and the unnamed officer thrust his arms up behind his back, "beyond hyperextension" to cause him harm. *Id.* Blanchard claims that Sanchez also applied pressure to his left elbow in an effort to break his arm. *Id.* at 6–7. Blanchard maintains that he made no threatening gestures, movements, or verbal threats that would have justified this attack by Sanchez or this use of physical force. *Id.* at 7.

When they arrived at Blanchard's newly assigned cell, Blanchard claims, Sanchez and the unnamed officer "excessively forced" him into the cell, causing him to trip over the toilet face first

2

while still handcuffed. ECF No. 1 at 7. Blanchard hit his head on the wall, and he states that he could have broken his neck. *Id.* Blanchard was left handcuffed and injured on the floor of Cell 24. *Id.* He claims that despite submitting continuous requests for medical attention for a potential fractured arm, injured neck, internal bleeding, and shoulder damage, his requests were refused by correctional officers and through sick call. *Id.* at 8–9. He states that it is impossible to diagnose any of these conditions with a visual examination. *Id.* at 9.

According to Sanchez, he was able to guide Blanchard out of his cell without incident and began escorting him to his new cell. ECF No. 16-4 at 2, ¶ 8. Division of Correction Directive ("DCD") 110-6 requires correctional officers to handcuff inmates behind their back at all times during an escort to disciplinary segregation for security purposes. *Id.* at ¶ 5. During the escort, Sanchez recalls, Blanchard attempted to "pull away" from him two times and continued to say he did not want to move to the new cell. *Id.* at ¶ 8. Sanchez continued to order Blanchard to stop pulling away, and he complied with the order eventually and became cooperative by the time they reached Cell 24. *Id.* at ¶¶ 8, 9. Sanchez states that Blanchard was placed in Cell 24 "without incident" and that his handcuffs were safely removed. *Id.* at ¶ 9. He denies attacking, assaulting, harassing, or threatening Blanchard or witnessing any other officer doing so. *Id.* at ¶ 10.

Defendants attach a verified medical record dated April 11, 2023, documenting a nurse sick call scheduled in response to Blanchard's requests to be seen. ECF No. 16-6 at 5–6. Blanchard told the nurse that he may have fractured his arm, that excessive force was used, and that his elbow was hyperextended. *Id.* at 5. The record indicates that Blanchard was sent twice that day for reports of an injury to his left arm, and he requested an x-ray. *Id.* The nurse assessed his elbow and noted that it was not swollen or discolored. *Id.* His left arm was palpated with no abnormal findings or tenderness noted; his left wrist had superficial linear abrasions that were scabbed over

without signs or symptoms of infection or swelling; and his range of motion in his elbow was intact. *Id.* Blanchard was advised to monitor the symptoms and to place a sick call request if the symptoms worsened or persisted, whereupon he walked out of the treatment room without assistance. *Id.*

The Department of Public Safety and Correctional Services ("DPSCS") Intelligence and Investigative Division ("IID") never received a request to investigate an incident regarding Blanchard's encounter with Sanchez on April 6, 2023. ECF No. 16-5 at 2. Blanchard requested such an investigation in the past for an incident that occurred on October 24, 2019. *Id.* at ¶ 4.

Blanchard claims that Sanchez committed second-degree assault against him; violated his Eighth Amendment right to be free from cruel and unusual punishment; subjected him to the excessive use of force; and violated his Fourteenth Amendment right to equal protection. ECF No. 1 at 10–11. He asserts that Warden Bohrer failed to properly train MCTC officers regarding security protocol.[3] *Id.* at 12.

## II.   PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

In his Motion for Appointment of Counsel, Blanchard states that he is illegally imprisoned, which limits his ability to litigate his claims meaningfully and to investigate the existence of relevant surveillance video.[4] ECF No. 19. While this case has been pending, Blanchard was transferred to the Prince George's County Detention Center, where he claims he does not have adequate resources to represent himself. *Id.*

---

[3] In his response in opposition, Blanchard abandons any potential claim under the Maryland Tort Claims Act and admits he did not comply with Maryland law requiring a claim to be filed with the treasurer prior to a complaint being filed in court. ECF No. 18 at 8.

[4] Defendants have provided a declaration from the litigation coordinator at MCTC stating that she performed a search for surveillance video of the incident involving Blanchard's escort to disciplinary segregation on April 5, 2023, and was unable to locate any video; nor were any serious incident reports or post-incident reviews created. ECF No. 16-3 at 3, ¶¶ 6, 7.

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024) ("[A] district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel," including "whether the plaintiff has a colorable claim" and, "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)). Exceptional circumstances include a litigant who "is barely able to read and write," *Whisenant*, 739 F.2d at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008) (citing *Waller v. Butkovich*, 584 F. Supp. 909, 947 (M.D.N.C. 1984). Here, Blanchard's claim fails not because it is inartfully plead, but because it is unsupported by factual allegations that Blanchard has the capability of presenting. As such, his motion shall be denied.

### III.  DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendants assert that the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, that summary judgment should be granted pursuant to Rule 56. ECF No. 16.

5

### A. Standard of Review

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Id.* at 261.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

6

the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). And though district courts have a duty to construe self-represented pleadings liberally, a plaintiff must nevertheless allege facts that state a cause of action. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that Blanchard is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does

not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### B. Plaintiff's Eighth Amendment Claims

Blanchard raises two Eighth Amendment claims: one in connection with his allegation that Sanchez used excessive force against him, and another based on his allegation that he was left in his cell without receiving required medical attention.

#### 1. Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6–7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *see also Dean v. Jones*, 984 F.3d 295, 301 (4th Cir. 2021). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Although Blanchard recounts a number of serious injuries he could have sustained during the encounter he described, he has not offered any objective evidence that he in fact sustained any

8

injury whatsoever as a result of the escort provided by Sanchez.  In fact, the escort from one cell to another appears to have been so unremarkable that it generated no serious incident reports, or disciplinary infractions, nor any apparent need to report the incident to IID at either Blanchard's request or Sanchez's request.  To the extent that Sanchez used any force to gain Blanchard's compliance in cooperating with the escort to his new cell, the force was within what is permissible by Eighth Amendment standards.

### 2. Deliberate Indifference to Medical Need

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

Blanchard has not established that he was suffering from an objectively serious medical need that a lay person, such as Sanchez, would easily recognize required a doctor's attention. From the description contained in the nurse's encounter with Blanchard, he was not exhibiting any signs or symptoms that would indicate to an ordinary lay person that he required medical attention. Absent any evidence of a serious medical need, Blanchard may not sustain this Eighth Amendment claim against Sanchez.

### C.   Equal Protection

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that his or her equal protection rights were violated, a plaintiff must demonstrate that he or she was treated differently than similarly situated inmates and the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 Fed. App'x 609, 611 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985)). If the discrimination was based on a plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest to pass constitutional muster. Otherwise, to prevail, the plaintiff must show that the discrimination did

not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440–42.

An equal protection claim requires a showing "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1027, 1051–52 (8th Cir. 1998). Accordingly, "while a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner's claims under the equal protection clause . . . must still be analyzed in light of the special security and management concerns in the prison system."[5] *Morrison v. Garraghty*, 239 F.3d 648, 655 (4th Cir. 2001) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977)) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence.").

Beyond his claim that other inmates were not subjected to the same treatment as he was, Blanchard has not stated an equal protection claim. He has not alleged that he was treated differently for some discriminatory reason such as his race, religion, or national origin. Further, the existence of a policy or rule that requires handcuffing all inmates who are being escorted to disciplinary segregation is a policy that applies equally to all inmates who are charged with a disciplinary rule violation and represents a legitimate security measure. *See* ECF No. 16-4 at 3, ¶ 5 (Decl. of Sanchez describing Div. of Corr. Directive 110-6).

---

[5] A prisoner's rights under the Constitution must not be inconsistent with his or her status as a prisoner. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Even when strict scrutiny would otherwise be applicable to a given policy, because of the exigencies of prison administration, regulations need only be reasonably related to a legitimate penological interest. *See Thornburgh v. Abbott*, 490 U.S. 401, 409–10 (1989).

**D.     Supervisory Liability**

Blanchard claims that Warden Bohrer failed to train Sanchez and other correctional officers in the proper use of security measures. He seemingly relies on his claim that Sanchez and the unnamed officer who accompanied him did not comply with what Blanchard understands are the appropriate standards for escorting an inmate from a cell to impugn Warden Bohrer's efforts to train his subordinates. However, a defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no respondeat superior liability under § 1983. *Love-Lane*, 355 F.3d at 782. Officials may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Blanchard's claim against Warden Bohrer is devoid of any allegation that he was personally involved in Blanchard's interaction with Sanchez. Bohrer is entitled to judgment in his favor.

## IV. CONCLUSION

By separate Order which follows, Defendants' motion, construed as one seeking summary judgment, shall be granted and judgment will be entered in their favor. Blanchard's Motion for Appointment of Counsel shall be denied.

| | |
|---|---|
| __9/30/25__ | _____/S/_____ |
| Date | Matthew J. Maddox |
| | United States District Judge |